ALEXANDER & HOWELL, plaintiffs in error, *vs.* EDMUND
GLENN *et al.*, defendants in *fi. fa.*, claimant, and SARAH
GLENN, defendants in error.

1. The owner of a plantation employed freedmen to cultivate it for part
of the crop, and agreed to furnish provisions, but being unable to do
so, applied to plaintiffs to furnish them, to prevent a failure of the
crop, stating that any arrangement they might make with the freedmen
to secure the same upon the growing crop would be satisfactory to her.
*Held*: that it was error in the Court to refuse to permit plaintiffs to
give these facts in evidence on the trial.
2. Where the evidence shows that it was the intention of the parties to
create a lien on the growing crop, under Act of 1866, for provisions
furnished to make the crop, as the statute prescribes no form, the
words " sell, mortgage, and convey " are sufficient for that purpose.'

Claim lien.   Tried before Judge HARRELL.   Early Su-
perior Court.   October Term, 1869.

VOL. XXXIX—1.

In January, 1867, John Matthews, of the one part, and Edmund Glenn and other negroes, of the other part, made a written contract by which Matthews was to furnish them land, seed, quarters, teams, tools and implements, and provisions, and they were to tend the farm, and divide the crop with Matthews, he taking one-half of it. They were to work on the plantation of Mrs. Sarah Glenn. Afterwards these negroes entered into a written contract in these words :

" GEORGIA, EARLY COUNTY:

Whereas, Alexander & Howell, merchants, have this day furnished us with provisions to the amount of four hundred and eighty-seven and 25-100 dollars, to enable us to carry on our farming interest on the planta- tion owned by, and known as the Sarah Glenn plantation, in the 5th dis- trict of Early county, we severally sell, mortgage and convey unto the said Alexander & Howell, their heirs and assigns, all of our present growing crop on said plantation for the year 1867, and we authorize them, should the said amount of four hundred and eighty-seven 25-100 dollars not be paid by the first day of November next, to enter on said planta- tion and take and sell enough of the present growing crop as shall dis- charge our indebtedness to them."

It was dated 11th of May, 1867, and signed and sealed in the presence of witnesses, by said negroes.

In December, 1867, Howell went before the County-Judge, made affidavit that said negroes owed his said firm $536 42, for provisions furnished them for making a crop on the plantation of Mrs. Sarah Glenn, described as aforesaid, that Alexander & Howell had, by contract, obtained from them a lien under the Act of 15th of December, 1866, etc. A bill of particulars, of provisions, etc., was attached to said affidavit, and referred to by it. The County-Judge ordered a *fi. fa.* " against the growing crop for the year 1867," in favor of Alexander & Howell for said sum claimed. *Fi. fa.* was issued as ordered. This *fi. fa.* was levied on thirteen bales of cotton, at Gilbert's landing, as the property of said negroes. Sarah A. Glenn, by her agent, James A. Glenn, filed a claim " to the one-half of said bales of cotton."

When this claim case came on for trial, the plaintiff's attorneys read in evidence their affidavit, order of *fi. fa.*, and levy, the contract made by Matthews, and the contract with

Alexander & Howell *vs.* Glenn *et al.*

Alexander & Howell. And it was conceded that in the former, Matthews was only the agent of Mrs. Glenn, and that the contract was with her. It was also conceded that said bales of cotton was part of the crop.

HOWELL then testified that Matthews, as agent for Mrs. Glenn, died in New Orleans on a visit there to buy provisions for said farm for Mrs. Glenn ; that she sent for Alexander & Howell, told them of her situation and inability to furnish provisions to carry on the farm, and that unless they would furnish provisions, the negroes would have to abandon the crop. He then offered to testify that Mrs. Glenn requested them to furnish the provisions, saying that any arrangement they might make with the negroes to secure the same upon the growing crop would be satisfactory to her. This was rejected upon the ground of irrelevancy. He then offered to testify that they took the lien and furnished the goods on account of Mrs. Glenn's representations. This was rejected on the same ground.

The evidence and argument closed. Plaintiff's attorney requested the Court to charge the jury, that before Mrs. Glenn could get the benefit of said contract by which she claimed the one-half of said crop, she must show that she complied with her part of the contract, and if the negroes were compelled, by necessity, to pledge it for supplies or abandon it, she could not insist upon her claim of said interest, especially if the provisions were furnished by her application or at her request. The Court refused to so charge. The jury found for the claimant. Plaintiff's attorneys say that the Court erred in rejecting said testimony and in refusing to charge as requested.

JONES & DAVIS, FIELDER & JONES, for plaintiffs in error.

J. E. BOWER, A. HOOD, E. DOUGLASS, for defendant in error.

Brown, C. J.

1. The evidence in this case shows that Mrs. Glenn was unable to furnish the provisions necessary to enable the freedmen to make the crop, as she had bound herself to do, and that she sent for the plaintiffs, and told them of her situation, and stated that unless they would furnish provisions the negroes would have to abandon the crop. Plaintiffs then proposed to prove that Mrs. Glenn requested them to furnish the provisions, saying that any arrangement they might make with the negroes to secure the same upon the growing crop, would be satisfactory to her. The Court refused to permit this evidence to go to the jury. The plaintiffs' counsel then asked the Court to charge the jury, in substance, that if Mrs. Glenn had failed to comply, on her part, and the negroes were obliged to pledge the crop for supplies or abandon it, she could not insist upon her claim to her interest until the debt was paid, especially if the provisions were furnished " by her application or at her request." The Court refused to give this charge.

We think the evidence, as proposed, should have been permitted to go to the jury, and that the charge, as requested, should have been given. If Mrs. Glenn told the plaintiffs of her situation, and requested them to furnish supplies to the freedmen to save the crop; and stated that any arrangement they might make to secure payment out of the growing crop would be satisfactory to her, it seems to us it was relevant and material for the plaintiffs to make such proof; and if they furnished the supplies under such assurances from her, she is bound by the arrangement made by the freedmen when they pledged the crop to secure the payment.

2. It was insisted on the argument, that the language used in the obligation given by the freedmen, as set forth in the report of this case, was not sufficient to create a lien on the crop, as provided by section 1977 of the Code. Where it is the intention of the parties to create such lien, we think the words " sell, mortgage and convey " sufficient for that purpose.

Judgment reversed.